IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MELISSA D. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 1:10cv1029-TFM |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I.  Introduction**

Plaintiff Melissa D. Smith ("Smith") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging that she is unable to work because of a disability.  Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Smith was 43 years old at the time of the hearing and is a high school and college graduate. (R. 30, 33.) Smith has prior work experience as a social worker, an administrator, and cashier. (R. 34-35, 123.) Smith alleges that she became

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

disabled on October 12, 2007, due to depression, hypertension, lupus, fatigue, arthritis, diarrhea, left hand numbness, and back and knee pain. (R. 36-40, 122.) After the hearing, the ALJ found that Smith suffers from severe impairments of systemic lupus erythematosus, osteoarthritis of the knee, facet arthropathy of the lumbar spine, and obesity plus non-severe impairments of depression, allergic rhinitis, gastroesophageal disease, history of bronchospasm, dyslipidemia, Vitamin D deficiency, and high blood pressure. (R. 11, 13.) The ALJ found that Smith is unable to perform her past relevant work, but that she retains the residual functional capacity to perform less than the full range of sedentary work. (R. 14, 19.) Specifically, the ALJ found that Smith is able to stand no more than fifteen minutes at a time and no more than two hours in an eight hour day and that she cannot operate foot controls with her left leg, kneel, crawl, or climb ladders, scaffolds, or ropes, work in temperature extremes, or perform work with complex or detailed instructions. (R. 14.) Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Smith could perform, including work as a surveillance system monitor, order clerk, and assembler. (R. 20.) Accordingly, the ALJ concluded that Smith is not disabled. (*Id.*)

**B. The Plaintiff's Claims.** Smith presents the following issues for review:

(1)   Whether the ALJ erred by failing to re-contact Smith's treating physician, Dr. Parker?

(2)   Whether the new evidence submitted to the Appeals Council

>   warrants remand?
>
> (3)   Whether the ALJ failed to properly consider the side effects of Smith's medication?

(Doc. No. 9, p. 1.)

## IV. Discussion

**A. New Evidence.** Title 42 U.S.C. § 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances. *Ingram v. Comm'r of Soc. Sec. Adm.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Smith asserts that she presented new evidence to the Appeals Council which was not considered by the ALJ. Because additional evidence was submitted and considered by the Appeals Council after the ALJ's decision, the proper inquiry is whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole. *See Ingram v. Astrue*, 496 F.3d 1252, 1262-64 (11th Cir. 2007). Smith argues that this case should be remanded to the Commissioner because the Appeals Council did not adequately consider the new evidence when denying her request for review.

Shortly after the ALJ rendered her May 21, 2010 decision, Smith gave medical records to the Commissioner indicating that she received treatment for high cholesterol on March 30, 2010, that a physician ordered an x-ray of her spine on May 26, 2010, and that the medical center sent her a letter on June 3, 2010. (R. 351.) Smith also submitted a January 8, 2010, physical residual functional capacity questionnaire, in which her treating physician,

Dr. Mary Lynn Parker, concludes that Smith is "incapable of even 'low stress' jobs," that she is unable to walk without having to rest or enduring severe pain, that she is able to sit for no more than two hours and stand for no more than five minutes at a time, that she would be able to stand for no less than two hours and sit for approximately two hours total in an eight-hour work day, that she must take walking breaks every five minutes, that she must take unscheduled breaks throughout the work day, that her legs should be elevated, that she may occasionally lift and carry no more than ten pounds, that she may never stoop, bend, crouch, or climb ladders and stairs, and that her impairments would cause her to be absent from work more than four days per month.  (R. 354-358.)

The Appeals Council considered the additional evidence and determined that the information did not provide a basis for changing the ALJ's decision.  (R. 1, 4.)  Smith argues that the Appeals Council's rejection of Dr. Parker's opinion is not supported by substantial evidence.  Specifically, she contends that the ALJ's decision to deny benefits based on Dr. Parker's failure to provide a "function by function assessment of [Smith's] abilities" (R. 19) is inconsistent with the doctor's specific findings concerning her functional limitations as set forth in the physical residual functional capacity questionnaire.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with

other evidence of the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

Although the ALJ did not have Dr. Parker's residual functional capacity evaluation before her at the time she made her decision, the court concludes that the record as a whole demonstrates that the Commissioner's decision to deny benefits is supported by substantial evidence.  The medical records indicate that Smith has received medical treatment from Dr. Parker, a general practitioner, on an ongoing basis since May 1998.  (R. 354.)  During this time, Dr. Parker treated Smith for several medical problems, including dyslipidemia, hypertension, gastroesophageal reflux disease, weight gain, and depression.  (R. 239-255.)

In February 2007, Dr. Parker referred Smith to Dr. In Young Soh, a rheumatologist at Dothan Medical Associates, P.C.  (R. 248.)  On February 23, 2007, Dr. Soh conducted an examination of Smith, noting that her ANA test was positive and to watch for signs of lupus.  (R. 225.)  On August 23, 2007, Smith returned to Dr. Soh, complaining of swelling of the left knee and pain of the second and third metacarpal and distal interphalangeal joints.  (R. 221.)  Dr. Soh assessed a history of positive ANA and arthritis and recommended an injection of Depo-Medrol to the left knee, a prescription for Prednisone, Mobic, Hydroxychloroquinine, and additional laboratory testing.  (*Id.*)

In September 2007, Smith returned to Dr. Soh for a follow-up appointment. (R. 219.) Dr. Soh noted that Smith's knee pain had subsided after receiving an injection of corticosteroids, that her general joint pain and fatigue had also subsided, that Smith did not have any physical complaints, that she denied fatigue and Raynaud symptoms, and that there were no signs of joint tenderness, swelling, or synovial inflammation. (*Id*.) Dr. Soh further assessed that Smith suffers from systemic lupus erythematosus and recommended that she continue taking Hydroxychloroquine twice a day, taper down Prednisone to 5 milligrams a day, and prescribed Mobic. (*Id*.) During a follow-up appointment on October 9, 2007, Dr. Soh noted that Smith "does not feel fatigue as bad as before and she does not have joint pain." (R. 217.) Dr. Soh recommended that Smith continue taking hydroxychloroquine and return to his office in three months. (*Id*.) Upon Smith's return to Dr. Soh's office on January 9, 2008, Dr. Soh noted that Smith denied morning stiffness, joint pain, fatigue, or Raynaud symptoms. (R. 216.) In addition, Dr. Soh's examination indicated no joint swelling, tenderness, or signs of synovial inflammation. (*Id*.) Dr. Soh assessed that Smith suffered from systemic lupus erythematosus with xerophthalmia and recommended that she continue taking hydroxychloroquine and that additional laboratory studies, specifically an ANA, ESR, anti-SSA and anti-SSB lab test, be conducted. (*Id.*)

In February 2008, Smith returned to Dr. Soh with complaints of a swollen right knee and knee pain. (R. 215.) Dr. Soh administered an injection of Triamcinolone and advised Smith to continue taking Plaquenil twice a day. (*Id*.) On June 2, 2008, Smith presented to Dr. Soh with complaints of painful swelling of the right knee. (R. 214.) Dr. Soh's

8

examination indicated tenderness and swelling of the right knee and no other joint tenderness or swelling. (*Id.*) Dr. Soh renewed Smith's prescription for Hydroxychloroquinine and prescribed a two-week supply of Celebrex and Prednisone. (*Id.*)

During the time she received treatment from Dr. Soh, Smith continued to seek treatment from Dr. Parker for her other medical conditions. (R. 239-247.) On June 25, 2007, Dr. Parker assessed that Smith suffered from obesity and recommended that she lose weight. (R. 246.) On September 4, 2007, Smith reported that she was "feeling good." (R. 244.) On September 27, 2007, Dr. Parker assessed that Smith continued to suffer from hypertension, elevated liver function tests, lupus, dyslipidemia, and weight gain and recommended that she follow a low-fat diet and lose weight. (R. 240-41.)  In January 2008, Dr. Parker again recommended that Smith follow a weight loss program. (R. 239.)  Due to test results indicating an increase in Smith's globulin and LDL levels in March 2008, Dr. Parker referred Smith to Dr. Thomas Brown, an oncologist at Dothan Hematology and Oncology, P.C. (R. 239.)

On May 7, 2008, Smith presented to Dr. Brown with complaints of abnormal test results, some arthritis in her knees, weight gain, and an occasional rapid heart beat. (R. 201.) She also reported that she suffers from fatigue, nausea, diarrhea, numbness in her hips and thighs from time to time, and back pain. (*Id.*) Dr. Brown noted that Smith's joint pain and arthritis problems have increased and that she has steadily gained weight. (*Id.*) Dr. Brown also noted that, when discussing the aspect of weight reduction and exercise, Smith explained that her knee problems affect her ability to walk; Dr. Brown, however, "stressed to her that

9

if she does not walk, she will potentially gain weight and have more problems [and that] her diet is important with exercise." (*Id.*) On June 2, 2008, Smith returned to Dr. Brown for a follow-up appointment. (R. 199.) Dr. Brown noted that "[f]or the most part, it would appear that she does not have any major problems," assessing that test results indicated that Smith's LDH level was normal and that her elevated globulins may be the result of her history of lupus. (*Id.*)

On November 28, 2008, Smith went to Dr. Soh with complaints of left knee pain. (R. 326.) Dr. Soh noted crepitation and tenderness of the left knee with no signs of synovial inflammation or swelling and assessed that Smith's systemic lupus erythematosus was stable and that she suffered from osteoarthritis of the knee. (*Id.*) He administered an injection of Triamcinolone to Smith's left knee and advised Smith to continue taking Hydroxychloroquinine twice a day and Celebrex as needed for pain. (*Id.*) On November 16, 2009, Smith returned to Dr. Soh's office with complaints of pain and swelling of the left knee, especially in a weight-bearing position. (R. 325.) Dr. Soh noted Smith's left knee had severe crepitation and tenderness with mild swelling but no effusions or active inflammation and that she weighed 308 pounds. (*Id.*) Dr. Soh assessed osteoarthritis and administered an injection of OrthoVisc to Smith's left knee. (*Id.*) On November 23, 2009, Smith returned to Dr. Soh's office for a follow up appointment. (R. 324.) Dr. Soh noted that Smith's left knee had mild crepitation without tenderness, swelling, or signs of synovial inflammation, that her systemic lupus erythematosus was stable without signs of lupus, that her repeat ANA test was negative, and that her "knee pain secondary to osteoarthritis associated with

overweight has improved with hyaluronate injection." (*Id.*) Dr. Soh diagnosed Smith as suffering from osteoarthritis of the left knee and systemic lupus erythematosus in remission, administered an injection of Hyaluronate to the left knee, and advised her to discontinue Hydroxychloroquine. (*Id.*) On November 20, 2009, Dr. Soh noted that Smith's knee pain and stability of gait had improved and administered an additional injection of Hyaluronate to her left knee. (R. 323.)

Smith continued to seek treatment from Dr. Parker on a routine basis for her knee pain and other impairments between 2008 and 2010. On several occasions, Dr. Parker prescribed a Flector patch and Voltaren gel for Smith's complaints of knee pain. (R. 332, 334, 337, 342.) On January 29, 2010, Dr. Parker ordered an MRI of Smith's lumbar spine, which indicated facet arthropathy with no focal mass effect or significant stenosis. (R. 329.) On occasion, Smith complained to Dr. Parker that she suffered from diarrhea. (R. 336, 340.) On June 24, 2009, Dr. Parker scheduled an appointment for Smith to see Dr. Samuel Tarwater, a gastroenterologist.[4] (R. 337.) On October 30, 2009, Dr. Parker assessed that Smith suffered chronic diarrhea. (R. 336.) In an undated letter, Dr. Parker stated that she supports Smith's request for disability because she has been diagnosed as suffering from lupus, arthritis, depression, weight gain, gastroesophageal reflux disease, elevated liver function enzymes, and chronic diarrhea.[5] (R. 317.) Dr. Parker also noted that Smith's weight

---

[4] Although the record indicates that Dr. Parker scheduled an appointment with Dr. Tarwater, there is nothing in the record before the court indicating that Smith sought treatment from a gastroenterologist.

[5] The letter indicates that Smith was receiving treatment from Dr. Brown during the time Dr. Parker prepared her statement. (R. 317.) Thus, the court will assume for purposes of this opinion that the letter was

11

gain is due in part to her prescription for Zoloft and that other medications "are causing some of [her] GI side effects, which is debilitating, making it difficult to do day-to-day activities." (R. 317.)

In her analysis, the ALJ assigned little weight to Dr. Parker's determination that Smith's impairments are disabling. The ALJ scrupulously detailed Smith's medical history and noted contradictions between Dr. Parker's assessment and the medical evidence. Specifically, the ALJ determined that Dr. Parker's opinion was inconsistent with the medical record as a whole. For example, the ALJ noted that the medical specialists, Dr. Soh and Dr. Brown, did not place any functional restrictions on Smith. With the exception of Dr. Brown's recommendation that Smith lose weight and exercise, nothing in the medical record indicates that a medical specialist placed any physical restrictions on Smith. Thus, the medical records support the ALJ's conclusion that the medical specialists did not place any functional limitations or restrictions on Smith.

Further, with the exception of her recommendation that Smith follow a weight loss program, Dr. Parker's own medical records indicate that no restrictions or limitations were placed on Smith. Although Smith asserts that an application for a temporary disabled parking tag completed by Dr. Parker indicates that she is "totally disabled," Dr. Parker's conclusory statement is not supported by the objective medical evidence. *See Williams v. Astrue*, No. 1:09cv2689-AJB, 2011 WL 1131328, *21 (N.D. Ga. 2011) (discounting treating

---

written at some point between May and June of 2008.

physician's conclusory statement of total disability in an application for a disabled parking permit based on the lack of objective medical evidence). Based on the foregoing, the court concludes that Dr. Parker's assessment that Smith's impairments severely limit her ability to perform work and meet routine attendance requirements is not supported by the objective medical evidence.

Upon consideration of the evidence as a whole, including Dr. Parker's opinion regarding Smith's functional restrictions as set forth in the residual functional capacity questionnaire, the court concludes that the Commissioner's determination that Smith can perform work at the sedentary level is supported by substantial evidence.

**B. The Treating Physician's Notes**. Smith asserts that the ALJ should have sought additional information from Dr. Parker. Specifically, she argues that the ALJ's determination that "a review of the record in this case reveals no restrictions recommended by the treating doctor" (R. 18) coupled with her finding that "a portion of Dr. Parker's notes are illegible" (R. 16) establishes that the ALJ should have re-contacted the treating physician.

An ALJ has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). This court has reviewed Dr. Parker's notations in the medical record, as well as her findings in the residual functional capacity questionnaire. Although the treating physician's handwriting is difficult to read, Dr. Parker's notations are understandable when viewed in the context of the medical records. Nothing in Dr. Parker's notes indicates a recommendation that Smith refrain from work or other physical activity on a long-term basis.

As previously discussed, the medical specialists recommended that Smith engage in exercise, such as walking.

More importantly, because substantial evidence supports the Commissioner's determination that Smith is not disabled, re-contacting the treating physician for additional information or clarification is unnecessary. *See Shaw v. Astrue*, Fed. Appx. 684, 688-89 (11th Cir. 2010) (holding that the ALJ did not err by neglecting to re-contact the treating physician since additional contact is only necessary where the basis of the opinion cannot be ascertained); *Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008) (holding that substantial evidence supported the ALJ's decision not to accord controlling weight to the treating physician's opinion and the ALJ was not required to re-contact the claimant's treating physician because the progress notes were adequate and the rest of the evidence supported the ALJ's decision); *Osborn v. Barnhart*, 194 Fed. Appx. 654 (11th Cir. 2006). After carefully reviewing the medical records, this court concludes that the ALJ did not err in failing to re-contact the treating physician.

**C. Side Effects of Medication**. Smith asserts that the ALJ failed to properly consider the effects her prescribed medications have on her ability to work. Specifically, Smith maintains that Plaquenil and Furosemide cause her to suffer diarrhea and that "[t]his side effect would create the need for sufficient breaks to allow [her] to use the rest room." (Doc. No. 9, p. 14.)

The ALJ must consider the side effects of Smith's medication where their existence

is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). In his analysis, the ALJ found as follows:

> At the hearing, the claimant testified that she struggles with diarrhea, which makes travel impossible for her. The claimant has reported her medications cause chronic diarrhea. (Exhibits 9E and 2E). Dr. Parker reported the claimant has gastroesophageal reflux disease and has suffered from chronic diarrhea. (Exhibit 12F). These conditions may contribute to her fatigue and this, I find the claimant is also precluded from standing and walking more than 15 minutes at one time or 2 hours in an eight hour day by her chronic diarrhea and gastroesophageal reflux disease.

(R. 16.)

Smith argues that the ALJ should have also considered whether chronic diarrhea would cause her to take frequent breaks throughout the work day. Although the medical record indicates that Smith suffers from chronic diarrhea which may be a side effect of her medication, the records does not indicate that this condition is so disabling as to prevent her from performing work. The court recognizes that Dr. Parker determined that Smith's "GI side effects . . . [are] debilitating, making it difficult to do day-to-day activities." (R. 317.) As previously discussed, this court concludes that Dr. Parker's opinion that Smith's impairments are disabling is not supported by the medical evidence. On three occasions during the relevant time period, Smith complained of suffering from diarrhea. (R. 201, 336, 340.) Although Dr. Parker's notes indicate that she referred Smith to Dr. Tarwater, a gastroenterologist, in June 2009, the record does not indicate that she sought treatment from him or another specialist for her condition. (R. 337.) Nothing in the record indicates that she sought ongoing treatment from a gastroenterologist or other specialist for gastrointestinal

problems. During the hearing before the ALJ, Smith testified that diarrhea prevents her from traveling; Smith, however, did not complain that this side effect causes her to take excessively frequent bathroom breaks throughout the day. Given the lack of medical records indicating that Smith's medication caused debilitating side effects, the court concludes that the ALJ's determination that there is no supporting evidence indicating the effects of Smith's medications are disabling is supported by substantial evidence.[6]

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that

---

[6] In her brief to this court, Smith attached an affidavit in which she provides a statement concerning the side effects of her medication. (Doc. No. 9.) The affidavit, however, was not provided to the ALJ or the Appeals Council. However, "a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram*, 496 F.3d at 1267. "[R]emand . . . is appropriate under sentence six when "evidence, that was not before the Secretary, has been submitted for the first time to [a federal] court."" *Id.* at 1268. Because the plaintiff seeks a remand based upon new medical evidence presented to this court, the question for the court is whether a remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.

In order to prevail on a claim for remand under § 405(g), a plaintiff must show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Ingram*, 496 F.3d at 1261. *See also Shalala v. Schaefer*, 509 U.S. 292, 297 fn 2 (1993). Thus, Smith must demonstrate that "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987); *Robinson v. Astrue*, 365 Fed. Appx. 993, 996 (11th Cir. 2010); *Pichette v. Barnhart*, 185 Fed. Appx. 855, 857 (11th Cir. 2006). *See also Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

Applying the three-prong remand standard, the court concludes that the information in the affidavit concerning the side effects of medication and her diagnosis of chronic diarrhea is cumulative to other evidence in the record and that Smith has failed to demonstrate cause for failing to submit the evidence at the administrative level. Generally, in order to satisfy the good cause prong a claimant must prove that the evidence did not exist at the time of the administrative hearing. *See Hyde*, 823 F.2d at 459; *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986). Consequently, a remand based on new evidence is not warranted in this case.

substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

DONE this 13th day of December, 2011.

>                /s/ Terry F. Moorer
>                TERRY F. MOORER
>                UNITED STATES MAGISTRATE JUDGE